UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-1103-DFH-TAB |
| | ) | |
| INDIANAPOLIS METROPOLITAN POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT

On September 1, 2006, police officers were dispatched to an address in response to emergency calls for help reporting that a man was shooting at a car or at his girlfriend as part of a domestic argument. Officers arrived at the scene, questioned the man and woman involved in the argument, and arrested the man, plaintiff Robert Butler, for criminal recklessness and other charges. Before the arrest, one officer also entered Butler's home without a warrant to retrieve the firearm. Butler later pled guilty to two counts of criminal recklessness, but the state court rejected the plea and the criminal case was dismissed. Butler then filed this civil suit. Butler settled with some defendants. The remaining defendants have moved for summary judgment on all remaining claims. Their motion is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving parties need not positively disprove the opponent's case; rather, they may prevail by establishing the lack of evidentiary support for that case if the non-moving party bears the burden of proof. See *Celotex Corp.*, 477 U.S. at 323. Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. See *id.* In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the record in the light reasonably most favorable to the

non-moving party and resolve all factual disputes in favor of the non-moving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 249-50.

*Undisputed Facts*

Keeping in mind the standard for summary judgment, the court treats the following facts as undisputed for purposes of defendants' motion for summary judgment.  During the afternoon of September 1, 2006, McKenna Decker was at the home of plaintiff Robert Butler when she placed an emergency 911 call and reported:  "I got somebody shooting at my car."  As Decker tried to obtain the address for the emergency dispatch operator, she could be heard telling someone to "get off" of her.  Butler's voice could also be heard in the background stating: "All I want is the cops come out here and get this girl out of my house."  Decker eventually gave the dispatcher the address, 9741 Vandergriff Road, and told the dispatcher that she was trying to get her things, but that "he" was shooting out her tires.  Butler could again be heard saying "Get the f*** out of my house." When the dispatcher asked if "he" was inside the house, Decker responded:  "Yes. And my son's here.  My three year old son is here and he's f***ing shooting the gun." Shortly thereafter, the 911 call was disconnected.  The dispatcher's attempt to reconnect was met with a recording asking the caller to leave a message.

A few minutes after Decker's call, a female who identified herself only as "McKenna", placed a 911 call as well.  She reported that her neighbor next door

was shooting at his girlfriend and indicated that she lived at 9743 Vandergriff Road.  She identified the neighbor who shot the gun as Robert Butler and told the dispatcher what she believed to be his age.  She said that she saw Butler and his girlfriend arguing in his front yard approximately five minutes earlier, but she could no longer see either Butler or his girlfriend.  The caller indicated that she had gone inside her own home after the shots were fired to be with her own child.

Deputy Glenn Schmidt of the Marion County Sheriff's Department (since consolidated with the Indianapolis Police to form the Indianapolis Metropolitan Police Department or IMPD) was dispatched to 9741 Vandergriff Road with an indication that shots had been fired.  Via radio transmission, the dispatcher informed law enforcement units heading to the scene that Robert Butler was the subject of the 911 report, that there was a child on the scene, and that it was reported that he was shooting at his girlfriend's car.  See Def. Ex. C.  Schmidt arrived on the scene to find Butler and Decker outside the rear of Butler's home near Decker's vehicle.  Decker's two year old son was also there.  After patting down Butler and finding no weapon, Schmidt asked what was going on and told Butler that there had been a report of gunshots.  Butler admitted to Schmidt that he had shot his .40 caliber handgun in the driveway area near Decker's car after becoming upset and walking out of his home during an argument with his

girlfriend.  He told Schmidt that he had since taken the gun inside and put it on or under his bed.[1]

After another deputy and an officer from the local township school police arrived on the scene, Schmidt went into Butler's house and retrieved Butler's handgun.  Thereafter, Schmidt and the other two law enforcement agents on the scene found three spent .40-caliber shell casings and bullets close "in very close proximity" to Decker's car, see Def. Ex. C, after which Butler was placed in handcuffs.  Butler does not contest that the casings were from the hollow point bullets he used in his handgun.  He claims that he used hollow point bullets because he believed they were less likely to ricochet.

Schmidt took Decker aside to hear her side of the story.  He testified that she reported that before Butler stepped outside and began shooting his gun, Butler had been inside with her and her son and had pointed the gun in their direction, threatening to "put a bullet in her head."[2]  After listening to Decker,

---

[1]Butler claims that he admitted firing the gun directly into the ground, while Schmidt contends that he admitted firing it at Decker's vehicle.  For purposes of summary judgment, the court accepts Butler's version of what he told Schmidt.

[2]Butler denies threatening or pointing a gun at Decker, but he has failed to offer admissible evidence contradicting Schmidt's version as to what Decker told him on these points.  Butler has not offered an affidavit from Decker.  He sought to introduce deposition testimony taken from Decker in his criminal case, but in an entry dated July 13, 2009 (Dkt. No. 91), this court ruled that Decker was not unavailable to testify in this case and that her prior deposition testimony was also not admissible in this matter because the defendants in the case did not have an opportunity to participate and cross-examine her in the criminal case.  See 2009
(continued...)

Schmidt told her that she was free to leave, but Decker responded that she had some things in Butler's house that she needed to retrieve. Officer Brian Whittemore from the Franklin Township School Police accompanied Decker when she went back into the house and into Butler's bedroom to obtain her things. While Decker was obtaining the items she had left in Butler's bedroom closet, Whittemore noticed a bulging plastic shopping bag on the floor of the closet in plain view near where Decker had her hands. Whittemore asked Decker to back away so that he could check the bag for further weapons. When he removed a shirt from the top of the bag, he found that the bag was stuffed with what he suspected was marijuana.

Officer Whittemore returned outside and told Deputy Schmidt what he had found. Schmidt called an evidence technician and narcotics detective to the scene. Schmidt informed Detective Jason Barber of the circumstances, including informing the detective that Decker had said that Butler had become mad at her, told her to leave, and then pulled a gun on her when she attempted to leave with her son. Based on Detective Barber's recommendation, Schmidt then placed Butler under arrest for possession of marijuana and dealing in marijuana, in addition to criminal recklessness with a handgun, intimidation, and criminal confinement. Deputy Schmidt took Butler to the arrestee processing center.

---

[2](...continued)
WL 2092416 (S.D. Ind. July 13, 2009).

Butler's bail was set at $100,000, which he was unable to satisfy, causing him to be transported to the county jail.  After Butler obtained counsel, a further hearing resulted in his bail being reduced to a level that allowed him to obtain his release from jail.  He claims that he suffered from several medical afflictions that required medication and that while in jail he was not provided adequate medical attention and was not allowed to take the medications he needed.

The state charged Butler with the following counts:

Count I:      pointing a handgun at Decker and saying words to instill fear of retaliation for a lawful act;

Count II:     pointing a handgun at Decker;

Count III:    pointing a handgun at Decker's son;

Count IV:     recklessly firing a weapon at Decker's vehicle, creating a substantial risk of bodily injury to Decker;

Count V:      recklessly firing a weapon at Decker's vehicle, creating a substantial risk of bodily injury to Decker's son.

Butler entered into a plea agreement under which he pled guilty to Counts IV and V in exchange for the state dropping the remaining counts.  The plea agreement was submitted to the judge presiding over the criminal case.   For reasons unknown, the plea was never entered.  Eventually, the prosecutor dismissed all of the charges.  Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

Butler brought this civil action pursuant to 42 U.S.C. § 1983 against the IMPD, Marion County Sheriff's Department, Deputy Schmidt, Detective Barber, Corrections Corporation of America, and two of its employees.  Butler reached a settlement with CCA and its employees on his claim of deliberate indifference to a serious medical need.  Those defendants have been dismissed from the case. Butler still pursues his claims of false arrest, illegal search and seizure, and withholding exculpatory evidence against IMPD, the Sheriff's Department, Schmidt, and Barber, all of whom have joined in a motion for summary judgment (Dkt. No. 68).

I.      *IMPD and the Marion County Sheriff's Department*

IMPD argues that it is not a separate suable entity.  Both IMPD and the Sheriff's Department contend that Butler has not offered evidence that any supposed constitutional violations were the result of the enforcement or execution of an express policy or custom of either law enforcement agency.  A governmental unit may not be held liable under 42 U.S.C. § 1983 simply because one of its non-policymaking employees violated a person's constitutional rights.  To hold the local government liable, the deprivation must have resulted from the enforcement of an express policy or an implicit custom adopted by the governmental unit. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

The court need not determine here whether the IMPD is a proper entity for suit.  Butler failed to develop any argument in response to the contention of both government defendants that he has failed to identify a policy or custom supporting his claim against them.  (Butler conceded as much in the introduction to his response brief, but other portions of the brief make the concession a little too ambiguous for the court to rely solely upon it.)  The failure of a plaintiff to offer any response to a well developed and supported summary judgment argument that challenges a particular claim should be considered an abandonment of that claim or issue.  See *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (finding waiver of argument on appeal); *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (affirming summary judgment for defendant on policy and custom claim).  IMPD and the Marion County Sheriff's Department are entitled to summary judgment.

II.     *Detective Jason Barber*

Barber also has not articulated a basis for holding Detective Barber liable. Barber was the detective called to the scene by Schmidt after Whittemore escorted Decker out of Butler's house and notified Schmidt of the bag he had seen that he believed contained marijuana.  Barber was not the arresting officer.  His role was to advise Schmidt to add the marijuana charges as an additional basis for Butler's arrest.   Again, Butler's failure to respond effectively to Barber's summary

judgment arguments amounts to abandonment of the claim against him. Defendant Barber is also entitled to summary judgment.

III.   *Deputy Glenn Schmidt*

That leaves Deputy Schmidt as the remaining defendant on each of Butler's theories of deprivation of his constitutional rights.  The undisputed facts show that none of those theories could lead to a finding that Schmidt is liable for violating Butler's constitutional rights.

   A.   *The Arrest Claim*

The undisputed facts show that Deputy Schmidt had probable cause to arrest Butler for criminal recklessness.  Schmidt was dispatched to the scene with a notification that shots had been fired at the suspect's companion's car.  See Def. Ex. C.  The radio transmissions from dispatch indicated that a 911 caller had reported Butler shooting his gun and that a child was in the area as well.  Upon arrival at the scene, Butler admitted to having had an argument with Decker that had left him angry and frustrated and that had led him to begin firing his .40 caliber handgun after walking out of the house, though according to Butler's version, he had fired safely at the ground.  Before Deputy Schmidt arrested Butler, the record before the court indicates, without admissible contradiction, that Decker told Schmidt at the scene that Butler had been holding the gun and had threatened to "put a f***ing bullet into her head," then prevented her from leaving

the house and began firing at her car.   Schmidt also found spent shells and bullets very close to Decker's car.

Probable cause for an arrest exists where the facts and circumstances within an officer's knowledge are sufficient for a prudent person to conclude that a suspect has committed a crime.  *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000). Probable cause is an absolute bar to a claim of false arrest pursuant to 42 U.S.C. § 1983.  *McBride v. Grice,* — F.3d —, 2009 WL 2432480, *3 (7th Cir. Aug.11, 2009).  Butler contends that probable cause is an issue for the jury and that even if probable cause existed for the criminal recklessness charge, there was no probable cause for the other charges when he receives the benefit of all conflicts in the evidence and favorable inferences from them.

A plaintiff asserting a false arrest claim under § 1983 has the burden of demonstrating a lack of probable cause.  *Id.*  Probable cause to arrest a person on one charge legitimizes the entire arrest even if the person ends up being  charged with other related or unrelated crimes.  *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007); *United States v. Williams*. 495 F.3d 810, 817-18 (7th Cir. 2007). While the issue of the existence of probable cause is often left to a jury, it is appropriate for a court to decide that probable cause existed as a matter of law when, after examining the totality of circumstances, there is no room for any reasonable difference in opinion.  *Qian v. Kautz,* 168 F.3d 949, 954 (7th Cir. 1999).

Criminal recklessness in Indiana includes recklessly performing an act that creates a substantial risk of bodily harm to another.  See Ind. Code § 35-42-2-2(b). The facts undisputedly known to Schmidt at the time were more than he needed to arrest Butler on a criminal recklessness charge.  Based on the information from dispatch  and Butler's own admissions, Schmidt might well have had probable cause to arrest him on criminal recklessness charges without anything more. Butler did not deny then, and he does not deny now, that he fired a gun not far from his girlfriend and her son while he was upset as a result of an argument with that girlfriend.

Deputy Schmidt had more information, however.  Deputy Schmidt was not required, as a matter of constitutional law, to believe Butler's version of events. The undisputed facts before the court show that before Schmidt arrested Butler, Decker told Schmidt that Butler had first threatened her with the gun and then began firing at her car, and Butler found spent bullets and shells very close to Decker's car.  Those facts gave Deputy Schmidt ample basis for arresting Butler for criminal recklessness.[3]

---

[3]Schmidt also relies on Butler's signed plea agreement, in which he accepted culpability for the two criminal recklessness charges brought against him in state court.   Butler does not challenge the admissibility of the plea agreement, contending that "it is admissible in evidence as an admission" but that it must be considered along with other evidence.  In the court's view, however, this question is governed by Rule 410 of the Federal Rules of Evidence, which provides in relevant part that a plea of guilty that was later withdrawn is not admissible "in any civil or criminal proceeding."  (The rule also provides two limited exceptions that do not apply here.)  The language of the rule is not limited to withdrawn guilty pleas in federal criminal prosecutions and applies here.

2.    *The Search and Seizure Claim*

Butler's second claim against Schmidt is that he conducted a warrantless and unreasonable search of his home leading to the seizure of his property – the gun. A basic principle of Fourth Amendment law is that police searches of a home without a warrant are presumed unreasonable. *E.g.*, *Groh v. Ramirez*, 540 U.S. 551, 559 (2004); *Payton v. New York*, 445 U.S. 573, 586 (1980). But the ultimate touchstone under the Fourth Amendment is whether the police acted reasonably, and a police officer may enter a person's home without a warrant if the "exigencies of the situation" create a compelling need for such entry. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

Deputy Schmidt argues that the report from the 911 calls of shots being fired by Butler at or near his girlfriend and her young son, coupled with Butler's admission that he fired the gun and his indication that he had put the gun inside his house provided the type of exigent circumstances that warranted Schmidt entering Butler's home to retrieve the gun. Schmidt argues that even if he might have violated Butler's Fourth Amendment rights by entering his home, a reasonable law enforcement officer would not have understood that this act would have violated Butler's constitutional rights under the circumstances so that he would be entitled to qualified immunity. The court agrees that Schmidt is entitled to qualified immunity on this claim.

A law enforcement officer or other government official acting in the course and scope of his duties is entitled to qualified immunity for discretionary acts if it would not be "clear to that official that his conduct was unlawful in the situation confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Though qualified immunity is a defense, once it is raised by the defendant it is the plaintiff's burden to overcome it. *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). *Saucier* mandated a two-step process for resolving a qualified immunity defense. The court must first consider whether the facts alleged show that the officer's conduct violated the plaintiff's constitutional rights. If so, the question becomes whether the right was clearly established in light of the specific context of the case, so that a reasonable official would have understood that his conduct would violate the right. *Saucier*, 533 U.S. at 201. More recently however, the Supreme Court retreated from the two-step mandate and held that courts may exercise discretion in deciding whether to skip the first step, such as in cases where it "is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Pearson v. Callahan*, 555 U.S. —, —, 129 S. Ct. 808, 818 (2009) (holding that officers were entitled to qualified immunity for warrantless entry without deciding whether entry actually violated Fourth Amendment). In such cases, the *Pearson* Court correctly pointed out: "District courts and courts of appeals with heavy caseloads are often understandably unenthusiastic about what may seem to be an essentially academic exercise." *Id.*

The general presumption against warrantless searches is well established, but the scope of the exigent circumstances exception is broad enough that a reasonable officer in Deputy Schmidt's position could reasonably have thought that a quick entry to secure the gun was reasonable here.  When Schmidt decided to enter the house and secure the gun, he faced a potentially explosive situation in which he was still getting his bearings.  He knew that there had been reports of shots fired in a domestic dispute with a child on the scene.  He had just arrived and had learned that the suspect (Butler) did not have a gun on his person but that he had put it inside on or under his bed.  Schmidt had not arrested Butler at this point, and he and the other officers were still trying to hear from both Butler and Decker about what had happened.  The gun on the scene posed a potential threat if either Butler or Decker had suddenly decided to go inside and retrieve it.

The Supreme Court has taught that police officers may enter a home without a warrant to render emergency assistance to an injured occupant or "to protect an occupant from imminent injury."  *Brigham City v. Stuart*, 547 U.S. at 403, citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978), and *Georgia v. Randolph*, 547 U.S. 103, —, 126 S. Ct. 1515, 1525 (2006).  On the merits, there is certainly room to argue here about whether the danger posed by the loaded gun in the unoccupied home posed a threat of imminent injury.  In the quiet calm of a courtroom years later, it might be easy to say it did not.  But Deputy Schmidt faced an ambiguous and potentially explosive situation.  He acted swiftly and with

minimal intrusion to control the greatest source of danger.  He then returned to the more mundane task of sorting out conflicting versions about what had happened and how best to respond to the dispute.

In this situation, where the moving defendant relies on the defense of qualified immunity, the plaintiff "must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case."  *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008).  Butler's response distinguishes *Brigham City v. Stuart* on its facts, but he has not identified cases showing that any reasonable officer in Schmidt's situation should have recognized that he could not enter the house without a warrant to secure the gun.  Schmidt is entitled to summary judgment on his qualified immunity defense to the search claim.

### 3.   *Exculpatory Evidence Claim*

Butler titled Count 3 of his Second Amended Complaint as a claim for "withholding exculpatory evidence," alleging that Schmidt kept to himself evidence that was favorable to Butler, and did so as part of a practice adopted by county law enforcement agencies near election time.  Butler has offered no evidence of such a custom or practice and, as pointed out previously, conceded any *Monell* claim in his response brief.  Further confusing the matter, in response to the

summary judgment motion, Butler claims that Count 3 is predicated on his substantive due process rights and then argues that such a claim is founded on Schmidt having lied in providing his rendition of the events.  Presumably, plaintiff is referring to Schmidt's recounting of events in connection with the probable cause affidavit.  What Butler contends Schmidt lied about is not pointed out in his brief or in his pleadings, leaving his argument undeveloped.  The failure to address and develop a claim can constitute waiver.  See *330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) (perfunctory and undeveloped assertion was not sufficient to provide separate basis for appeal).

Even if the court assumed that Butler is arguing that Schmidt lied about what Decker told him when Schmidt asked for her side of the story at the scene, there is no admissible evidence here that Decker said anything different.  She has provided no sworn testimony in connection with this case, and she is the only person who could contradict Schmidt's version of what she told him.  The transcripts of the 911 calls are consistent with what Schmidt has said Decker told him at the scene.  In the end, there is no admissible evidence to support this undeveloped claim.

*Conclusion*

For the foregoing reasons, the undisputed facts are insufficient to support a conclusion, under any of the asserted theories, that plaintiff's constitutional

rights were violated.  Accordingly, defendants' motion for summary judgment (Dkt. No. 68) is granted.  A final judgment in favor of the defendants shall be issued.

So ordered.

Date: Sept. 1, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Paul K. Ogden
ROBERTS & BISHOP
pogden@roberts-bishop.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrobatty@aol.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org